## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED FINANCIAL CASUALTY
COMPANY,

Plaintiff,

     v.

STEVEN T. BENNER d/b/a BENNER
BROTHERS TRUCKING; LEHIGH
HANSON ECC, INC.; LEHIGH HANSON
INC.; LEHIGH HANSON SERVICES, LLC;
LEHIGH CEMENT COMPANY; LEHIGH
CEMENT COMPANY, LLC; RUGGIERO
TRUCKING COMPANY, INC.; RUGGIERO
TRUCKING CO., INC.; RUGGIERO
BROTHERS, INC.; AND RUGGIERO
BROS., INC.,

Defendants.

Civil Action No.

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW, comes Plaintiff, United Financial Casualty Company ("UFCC"), by and through its

attorneys, BURNS WHITE LLC, and files the following Complaint for Declaratory Judgment,

averring as follows:

## THE PARTIES

1.    UFCC is an Ohio Corporation registered to conduct business in the Commonwealth

of Pennsylvania, with a principal place of business located at 6300 Wilson Mills Road, Mayfield

Village, Ohio.

2.    Steven T. Benner ("Mr. Benner") is a citizen of Pennsylvania residing at 2012

North Rockhill Road, Sellersville, Pennsylvania, who conducts his trucking business under the

unregistered fictitious and/or trade name Benner Brothers Trucking ("Benner Bros.") – upon

information and belief, Benner Bros. is not an independent legal entity.  (See Ex. 1.)

3.    Defendant Lehigh Hanson ECC, Inc. was a corporation organized and existing under the Commonwealth of Pennsylvania that merged into Lehigh Cement Company LLC effective July 1, 2018.

4.    Defendant Lehigh Hanson Services, LLC is a limited liability company organized and existing under the state of Delaware, with a principal place of business and address of 300 E. John Carpenter Freeway, Suite 1645, Irving, Texas.

5.    Defendant Lehigh Hanson Inc. is a corporation organized and existing under the state of Delaware, with a principal place of business and address of 300 E. John Carpenter Freeway, Suite 1645, Irving, Texas.

6.    Defendant Lehigh Cement Company is a corporation organized and existing under the Commonwealth of Pennsylvania, with a principal place of business located at 7660 Imperial Way, Allentown, Pennsylvania.

7.    Defendant Lehigh Cement Company, LLC is a limited liability company organized and existing under the state of Delaware, with a principal place of business located at 537 Evansville Road, Fleetwood, Pennsylvania, and with a registered address care of Corporation Service Company Dauphin, Pennsylvania.

8.    Defendants Lehigh Hanson ECC, Lehigh Hanson Services, LLC, Lehigh Hanson, Inc., Lehigh Cement Company, and Lehigh Cement Company, LLC, collectively, shall hereinafter be referred to as "Lehigh."

9.    After reasonable investigation and upon information and belief, neither of the Lehigh Defendant limited liability companies, nor any of its members, are citizens of Ohio.

10.     Defendant Ruggiero Trucking Company, Inc. is a corporation organized and existing under the Commonwealth of Pennsylvania, with a principal place of business and address of 930 E Market Street, Bethlehem, Pennsylvania.

11.     Defendant Ruggiero Trucking Co., Inc. is a corporation organized and existing under the Commonwealth of Pennsylvania, with a principal place of business and address of 930 E Market Street, Bethlehem, Pennsylvania.

12.     Defendant Ruggiero Brothers, Inc. is a corporation organized and existing under the Commonwealth of Pennsylvania, with a principal place of business and address of 1830 Chester Road, Bethlehem, Pennsylvania.

13.     Defendant Ruggiero Bros., Inc. is a corporation organized and existing under the Commonwealth of Pennsylvania, with a principal place of business and address of 1830 Chester Road, Bethlehem, Pennsylvania.

14.     Defendants Ruggiero Brothers, Inc., Ruggiero Bros., Inc., Ruggiero Trucking Company, Inc. and Ruggiero Trucking Co., Inc., collectively, shall hereinafter be referred to as "Ruggiero."

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, in that (i) complete diversity of citizenship exists between the Plaintiff and Defendants and (ii) the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

16.     Venue of this action in this Court is proper pursuant to 28 U.S.C. § 1391(b), in that Defendants are either located, reside, or regularly conduct business in this judicial district and this case concerns an insurance contract, which was entered into in this judicial district.

**NATURE OF THE ACTION & NECESSITY OF DECLARATORY JUDGMENT**

17.     This Declaratory Judgment Action is brought by UFCC seeking declaratory relief as to the rights and obligations of the parties under an insurance policy issued by UFCC to Mr. Benner – Policy No. 03245199-3 effective August 9, 2017 to August 9, 2018 (the "Policy") – as it relates to a lawsuit that was filed in the Court of Common Pleas of Philadelphia County, Pennsylvania at Docket No. 200302537 ("Lawsuit") relative to injuries that Mr. Benner allegedly sustained as a result of a motor vehicle accident on April 11, 2018 ("Accident").[1]

18.     An actual controversy has arisen between the parties in that Benner Bros., Lehigh, and Ruggiero have sought coverage under the Policy with respect to the Accident and Lawsuit, and UFCC has (i) with a reasonable basis and while reserving all rights, taken the position that the Policy does not provide coverage for the claims asserted against Benner Bros., and (ii) with a reasonable basis, denied coverage to Lehigh and Ruggiero with respect to the claims asserted against them in the Lawsuit.

19.     Consequently, UFCC seeks a declaration of the parties' rights and obligations under the Policy with respect to the Accident and Lawsuit.

**CLAIM BACKGROUND**

A.     **The Claims Against Lehigh and Ruggiero Alleged That They Were Negligent in Their Capacity as Owners, Possessors, and Operators of Land in Causing Injury to Mr. Benner and Seek to Impose Liability and Damages on That Basis.**

20.     The Lawsuit follows a prior action that was instituted by Mr. Benner on or about October 11, 2018 in the Court of Common Pleas of Philadelphia County at Docket No. 180802131,

---

[1] Although the Complaint and Joinder Complaint filed in the Lawsuit indicate an accident date of April 11, 2017, the Police Report issued with respect to the Accident states that the Accident occurred on April 11, 2018.

which was predicated on a similar complaint, but which did not name Ruggiero as a party ("Prior Action"), and which was discontinued prior to the institution of the Lawsuit.

21.     The Lawsuit is predicated on a Complaint that was filed by Mr. Benner against Lehigh and Ruggiero on or about April 13, 2020.  (See Ex. 2.)

22.     The Complaint filed in the Lawsuit also named Norfolk Southern Corporation and Norfolk Southern Railway Corporation (collectively "Norfolk Southern") as defendants.

23.     The Complaint filed in the Lawsuit alleges that Mr. Benner sustained injuries when the vehicle that Mr. Benner was operating was struck by a Norfolk Southern freight train, which was traveling on tracks that went through a cement facility owned and operated by Lehigh.

24.     The Complaint alleges that Lehigh and Ruggiero were the owners, operators, possessors, lessors, controllers, and/or otherwise responsible for the care and custody of the site of the Accident.

25.     The Complaint alleges that Lehigh and Ruggiero had a duty to keep the area at or around the railroad tracks safe and hazard free.

26.     The Complaint alleges that Lehigh and Ruggiero had knowledge of the dangerous conditions at the site of the Accident, including inadequate control devices and safety measures and failed to ensure the adequacy of the same.

27.     The Complaint alleges that Lehigh and Ruggiero were negligent in creating an unsafe condition on its premises; permitting an unsafe condition to continue to exist on its premises; failing to take steps to prevent unsafe conditions from developing on its premises; needlessly endangering persons coming onto or around its property; failing to correct any unsafe conditions it knows or should have known existed on its premises/property; failing to perform inspections on its premises/property to discover unsafe conditions; failing to hire a competent

property inspector to perform inspections of its premises; failing to train its workers and/or employees to ensure they perform their job in a safe manner; failing to provide adequate and appropriate notices and warnings of the unsafe condition; and failing to train its workers and/or employees to ensure a safe work environment.

28.     The Complaint also includes a claim for loss of consortium, on the same bases.

29.     Norfolk Southern asserted a cross-claim against Lehigh and Ruggiero for common law contribution and indemnity predicated on the conduct that is alleged in Mr. Benner's Complaint.  (See Ex. 3.)

**B.     The Claims Against Benner Bros. Allege That It is Vicariously Liable for Mr. Benner's Comparative Fault, Seek Contribution and Indemnity Based on the Same, and Allege That Benner Bros. Breached Contractual Obligations to Indemnify and Obtain Insurance for Lehigh and Ruggiero.**

30.     On or about May 1, 2020, Lehigh filed a Joinder Complaint against Benner Bros. (See Ex. 4.)

31.     The Joinder Complaint alleges that Benner Bros. is a corporation, partnership, and/or other business entity with an address that is the same as Mr. Benner's address.

32.     The Joinder Complaint alleges that the truck that Mr. Benner was operating at the time of the Accident was owned by Benner Bros., and was being operated by Mr. Benner with Benner Bros.' consent, for the benefit of Benner Bros.

33.     The Joinder Complaint alleges that Mr. Benner was a contractor for and/or was the agent, servant, and/or workman of Benner Bros., was operating a commercial vehicle for Benner Bros. in their affairs, and was subject to Benner Bros.' right of control such that Benner Bros. should be considered vicariously liable for Mr. Benner's negligence as further described in the Joinder Complaint.

34.    The Joinder Complaint alleges that "if Plaintiff Steven Benner was injured in the alleged accident, it appears that Plaintiffs' injuries were due to Plaintiff Steven Benner's own comparative negligence, for which Additional Defendant Benner Brothers Trucking is vicariously liable."

35.    The Joinder Complaint includes three claims: (i) Negligence, (ii) Breach of Contract, and (iii) Contribution and/or Indemnification and/or Additional Insured Status.

36.    The Joinder Complaint includes a negligence claim against "Benner Brothers Trucking as being vicariously liable for Steven Benner," predicated on the theory that Benner Bros. can be vicariously liability for Mr. Benner's comparative fault in operating the subject vehicle.

37.    The Joinder Complaint clarifies that "[s]olely as a result of the Additional Defendant's negligence, as being vicariously liable for Steven Benner, harm was suffered for which Additional Defendant is liable."

38.    The Joinder Complaint asserts a claim for Breach of Contract for failure to provide indemnity to the Lehigh entities subject to the indemnity provision set forth below, which appears in the contract between Steven Benner and Ruggiero.

39.    Nowhere is it alleged that Benner Bros. expressly agreed to indemnify any entity for their own negligence.

40.    The Joinder Complaint also alleges that the contract relative to the Benner Bros. work was breached by Benner Bros.' failure to obtain insurance for the Lehigh entities.

41.    The Contribution / Indemnification / Additional Insured claim seeks recovery where "[t]he injuries of Plaintiff were caused in whole or in part by the negligent acts or omissions of Benner Brothers Trucking as being vicariously liable for Plaintiff Steven Benner."

42.     However, there are no allegations concerning the alleged negligence of Benner Bros. separate from the conduct of Mr. Benner and the alleged vicarious liability of Benner Bros. for Mr. Benner's comparative fault.

43.     The Contribution / Indemnification / Additional Insured claim also seeks recovery where Benner Bros. failed to obtain coverage for the Lehigh entities as an Additional Insured as required by its contractual obligation.

44.     On or about July 10, 2020, Lehigh and Ruggiero filed a cross-claim against Benner Bros., mirroring the facts alleged and claims asserted in the Joinder Complaint. (See Ex. 5.)

45.     Norfolk Southern asserted a cross-claim against Benner Bros. for common law contribution and indemnity predicated on the conduct that is alleged in the Joinder Complaint. (See Ex. 3.)

**C.     The Subcontract Agreement Between Ruggiero and Steven Benner Does Not Require That Mr. Benner or Benner Bros. Indemnify any Entity for Their Own Negligence.**

46.     Pursuant to the Joinder Complaint, an "Insurance and Indemnification Agreement" dated October 25, 2017 existed between Mr. Benner and Ruggiero Trucking Company, Inc.  (See Ex. 4, at Ex. D.)

47.     The printed name of the "subcontractor" in the Agreement is "Steve Benner."

48.     "Benner Bros. Trucking" appears in printed text next to "Trade Name."  It appears that Mr. Benner signed the Agreement on October 24, 2017.

49.     The Agreement contains the following provisions:

Insurance

a.  Subcontractor, at its own expense, shall procure, carry, and maintain on all of its operations for all and any ongoing work; Commercial General Liability (CGL) insurance; and Automotive Liability Insurance.  Coverage limits shall be in accordance with the requirements listed below.  Subcontractor is required

to name Ruggiero Trucking Company Inc. as additional insured's on Subcontractor's General Liability policy using form # CG2010 11/15 or its equivalent (including Completed Operations).  Subcontractor is to maintain CGL coverage including the Additional Insured provision for a period of 3 years after completion of any work.  It is hereby understood and agreed that any insurance obtained by Ruggiero Trucking Company Inc. is deemed excess, non-contributory and not co-primary in relation to the CGL coverage procured by the Subcontractor.

b.  Subcontractor shall provide to Ruggiero Trucking Company Inc. prior to commencement of work a certificate from the insurance companies that such insurance is in force.  Commercial General Liability and Automobile Liability insurance to be placed with an "A-" or better A.M. Best Co. rated carrier.

c.  Required Limits shall be:

Minimum Commercial General Liability Coverage (Occurrence Basis)
$2,000,000 Products/Completed Operations Aggregate
$2,000,000 General Aggregate
$1,000,000 Any One Occurrence (Coverage A)
$1,000,000 Any One Person or Organization (Coverage B)
Per Project General Aggregate

Minimum Automotive Liability Coverage
$1,000,000 Each Accident (written on a comprehensive basis)

Indemnification and Waiver of Subrogation

To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless Ruggiero Trucking Company Inc. their subcontractors, the architect/engineer, the Owners and their agents, consultants and employees (the indemnities [sic]) from and against claims asking for bodily injury and property damage that may arise from the negligent acts or omissions of the subcontracted work by the subcontractor, the subcontractor's subcontractors or anyone employed directly or indirectly by them or by anyone for whose acts they may be liable and then only to the extent caused by their negligent acts or omissions. In claims against any entity indemnified under this section by an employee of the subcontractor or anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under this section shall not be limited by a limitation on the amount or type of damages, compensation, or benefits payable by or for the subcontractor or subcontractor's subcontractors under workers compensation acts, disability acts or other employment benefit acts.  Subcontractor waives all rights against Contractor and their agents, officers, directors and employees for recovery of damages to the extent these damages are covered by commercial general liability, business auto liability or workers compensation and employers liability insurance.

\*

## POLICY INFORMATION

50.     UFCC issued Commercial Auto Policy No. 03245199-3 to "Steven T. Benner" effective August 19, 2017 to August 19, 2018 (again, "UFCC Policy"). A copy of the Policy – the declarations and the forms identified therein – is attached hereto at Exhibit 6.

51.     The Policy was a renewal of Policy No. 03245199-2, which was effective August 19, 2016 to August 19, 2017 ("Prior Policy"), and which contained the same forms as the UFCC Policy that was in effect on what is understood to be the date of the Accident.  (See Ex. 7.)

52.     Benner Bros., Lehigh, and Ruggiero are not listed on the UFCC Policy as either an "insured" or "additional insured."

53.     The Policy contract is Form No. 6912 (06/10). The contract is modified by Forms 2852PA (03/11), 1652PA (03/11), 5701 (02/11), 4881PA (03/11), 4852PA (10/04) and Z228 (01/11).

54.     The UFCC Policy contains the following Insuring Agreement, as set forth in the Commercial Auto Coverage Form, written on Form No. 6912 (06/10):

> INSURING AGREEMENT - LIABILITY TO OTHERS
>
> Subject to the Limits of Liability, if you pay the premium for liability coverage for the insured auto involved, we will pay damages, other than punitive or exemplary damages, for bodily injury, property damage, and covered pollution cost or expense, for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of that insured auto. However, we will only pay for the covered pollution cost or expense if the same accident also caused bodily injury or property damage to which this insurance applies.
>
> We will settle or defend, at our option, any claim or lawsuit for damages covered by this Part I. We have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of

Liability for this coverage has been exhausted by payment of judgments or settlements.

55.     The UFCC Policy contains the following Definitions in the Auto Form:

GENERAL DEFINITIONS

The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.

1.  "Accident" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes bodily injury or property damage.

2.  "Auto" means a land motor vehicle or trailer designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.
                                    *

3.  "Bodily injury" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

                                    *

5.  "Insured auto" or "your insured auto" means:

    a.  Any auto specifically described on the declarations page;

                                    *

6.  "Insured contract" means:

                                    *

    e.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability that is vicariously imposed on another for your negligence or that of your employees or agents;

*

7.  "Loss" means sudden, direct and accidental loss or damage.

*

12. "Property damage" means physical damage to, destruction of, or loss of use of, tangible property.

*

16. "We", "us" and "our" mean the company providing this insurance as shown on the declarations page.

17. "You", "your" and "yours" refer to the named insured shown on the declarations page.

56.    The Auto Form also contains the following definitions relative to the liability coverage afforded thereunder:

ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

A.  When used in Part I - Liability To Others, insured means:

1.  You with respect to an insured auto.

2.  Any person while using, with your permission, and within the scope of that permission, an insured auto you own, hire, or borrow except:

(a) A person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing autos, unless that business is yours and it was so represented in your application.

(b) A person, other than one of your employees, partners (if you are a partnership), members (if you are a limited liability company), officers or directors (if you are a corporation), or a lessee or borrower or any of their employees, while he or she is moving property to or from an insured auto.

(c) The owner or anyone else from whom the insured auto is leased, hired, or borrowed unless the insured auto is a trailer connected to a power unit that is an insured auto.

However, this exception does not apply if the insured auto is specifically described on the declarations page.

For purposes of this subsection A. 2., an insured auto you own includes any auto specifically described on the declarations page.

3.   Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I – Liability To Others.

If we make a filing or submit a certificate of insurance on your behalf with a regulatory or governmental agency, the term "insured" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

\*

57.   The UFCC Policy contains the following Exclusions in the Auto Form:

EXCLUSIONS – PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I - LIABILITY TO OTHERS.

Coverage under this Part I, including our duty to defend, does not apply to:

\*

2.   Contractual

Any liability assumed by an insured under any contract or agreement, unless the agreement is an insured contract that was executed prior to the occurrence of any bodily injury or property damage.

However, this exclusion does not apply to liability for damages that an insured would have in the absence of the contract or agreement.

3.   Worker's Compensation

Any obligation for which an insured or an insurer of that insured, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

\*

5.  Employee Indemnification and Employer's Liability Bodily injury to:

    a.  An employee of any insured arising out of or within the course of:

        (i)  That employee's employment by any insured; or

        (ii) Performing duties related to the conduct of any insured's business; or

    b.  The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph a. above.

    This exclusion applies:

    a.  Whether the insured may be liable as an employer or in any other capacity; and

    b.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

    But this exclusion does not apply to bodily injury to a domestic employee if benefits are neither paid nor required to be provided under any workers' compensation, disability benefits, or similar law, or to liability for bodily injury assumed by the insured under an insured contract. For the purposes of this policy, a domestic employee is a person engaged in household or domestic work performed principally in connection with a residence premises.

\*

## CLAIM INVESTIGATION

58.     Following the Accident, Lehigh and Ruggiero tendered defense and indemnity of any claims relative thereto to Benner Bros. care of Mr. Benner's personal injury attorney in his capacity as a Plaintiff in the Lawsuit.  (See Ex. 8.)

59.     The tender directed to Mr. Benner and Benner Bros. was subsequently forwarded to UFCC.  (Id.)

60.     In response, and following review of the complaint that was filed in the Prior Action, UFCC issued a Declination of Coverage Letter to Lehigh and Ruggiero ("Declination of Coverage Letter"), a copy of which is attached hereto at Exhibit 9, advising that UFCC would not provide coverage for the claims associated with the Accident because (i) the claims in the complaint concerned direct allegations of negligence against Lehigh unrelated to the use of an insured auto, and (ii) Ruggiero was not named in the complaint and there were no claims asserted against Ruggiero.

61.     Following Notice to UFCC of the joinder complaint against Benner Bros. filed in the Prior Action, UFCC undertook the defense of the claims asserted against Benner Bros. pursuant to a Reservation of Rights Letter dated July 31, 2019 ("Reservation of Rights Letter"), a copy of which is attached hereto as Exhibit 10.

62.     The Reservation of Rights Letter advised that UFCC would undertake the defense of the claims against Benner Bros. in the Lawsuit – despite UFCC's understanding that there is no such entity and that Benner Bros is indistinguishable from Mr. Benner – but certain issues likely precluded coverage.

63.     More specifically, the Reservation of Rights Letter advised that it appeared that coverage was not available where: (i) Mr. Benner and Benner Bros. are legally indistinguishable, (ii) Mr. Benner could not be liable for injuring himself, (iii) the Policy only provides coverage for Mr. Benner's liability to others – not his fault for injuring himself, (iv) Benner Bros. was not listed as an insured, (v) there were no claims for which Benner Bros. could be vicariously liable for Mr. Benner injuring himself, such that Benner Bros. could not qualify as an insured, (vi) to the extent

that Benner Bros. was an independent entity that employed Mr. Benner, the Worker's Compensation and Employee Indemnification and Employer's Liability Exclusions apply to Mr. Benner's claim, (vii) breach of contract claims are not covered "accidents," (viii) the contractual indemnity claim did not fall within the "insured contract" exception, such that it remained subject to the Contractual Exclusion, and (ix) any indemnity for the liability of Lehigh was not predicated on the ownership, maintenance, or use of an auto, but, rather, Lehigh's independent negligence as a possessor of land.

64.     Thereafter, the Prior Action was discontinued by Mr. Benner.

65.     Following notice to UFCC that the Lawsuit had been filed, UFCC updated its coverage correspondence to Benner Bros., Lehigh, and Ruggiero.

66.     On July 2, 2020 UFCC issued a Supplemental Reservation of Rights to Benner Bros. ("Supplemental Reservation of Rights"), incorporating the prior Reservation of Rights, raising the same coverage issues previously addressed, and clarifying that a claim against Benner Bros. relative to alleged vicarious liability for Mr. Benner's comparative fault did not give rise to a claim for damages that could be covered by the Policy – comparative fault being a offset against a third-party's liability, as opposed to money damages to which Mr. Benner would be entitled.  A copy of the Supplemental Benner Bros. Reservation of Rights is attached hereto at Exhibit 11.

67.     On July 2, 2020, UFCC also issued a revised, Supplemental Declination of Coverage Letter to Lehigh and Ruggiero ("Supplemental Declination of Coverage Letter").  A copy of the Supplemental Declination of Coverage Letter is attached hereto at Exhibit 12.

68.     The Supplemental Declination of Coverage Letter reaffirmed UFCC's position that coverage was not available with respect to the Accident or Lawsuit, and advised that (i) Lehigh and Ruggiero are not identified as insureds on the Policy, (ii) there are no covered claims alleged

for which either would qualify as an insured, (iii) the claims against, and alleged liability of, Lehigh and Ruggiero do not relate to the ownership, maintenance, or use of an insured auto covered by the Policy, (iv) the claim is subject to the Worker's Compensation, Employee Indemnification and Employer's Liability Exclusions, and/or Contractual Exclusion, and (v) the "insured contract" exception to the contractual liability exclusion is not satisfied in this instance and, in any event, cannot confer coverage rights on third parties that do not otherwise qualify as insureds.

## **COVERAGE ISSUES**

69.     As set forth above, the Policy provides coverage for liability to others as it relates to "damages, other than punitive or exemplary damages, for bodily injury, property damage … for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of that insured auto."

70.     Here, Mr. Benner is the only injured party, Mr. Benner is the only party listed on the Policy as an "insured," and Mr. Benner cannot be legally liable to himself for causing his own injuries.

71.     Because Mr. Benner is legally indistinguishable from the trade name Benner Bros., Benner Bros. is not a legally recognized entity that can be liable for the injuries sustained by Mr. Benner for causing his own injuries.

72.     Accordingly, insofar as it relates to Mr. Benner and Benner Bros., there is no liability to others for which they could be liable, to which coverage could apply.

73.     Additionally, to the extent that any claim seeks to impose liability on any entity for the comparative fault of Mr. Benner, comparative fault does not give rise to damages that could be covered by the Policy, but rather, an off-set against the liability of a third party to Mr. Benner.

74.     Further, where Benner Bros., Lehigh, and Ruggiero are not listed on the Policy, the only means by which Benner Bros., Lehigh, or Ruggiero could qualify as an insured would be by operation of the omnibus provision – part A.3. of the definition of "insured" in the "Liability to Others" coverage part.

75.     The omnibus provision only provides coverage for the vicarious liability of third parties for the insured's – that is, Mr. Benner's – acts or omissions for which Mr. Benner is covered.

76.     Because Mr. Benner cannot be liable for causing his own injuries, there are no claims for which Benner Bros., Lehigh, or Ruggiero could be vicariously liable, such that none qualify as an insured under the omnibus provisions.

77.     Furthermore, to the extent that Benner Bros. is a distinct entity, and Mr. Benner is an employee of that entity, the Worker's Compensation and/or Employee Indemnification and Employer's Liability Exclusions apply.

78.     Moreover, the Policy does not provide coverage for breach of contract claims, whether it relates to the breach of an alleged indemnity obligation or an obligation to obtain insurance, as such claims do not constitute an "accident" as that term is defined.

79.     In addition, where the indemnity provision does not expressly assume liability for the claims at issue – claims predicated on Lehigh and/or Ruggiero's own negligence – the indemnity provision does not fall within the "insured contract" exception to the Contractual Exclusion, such that the exclusion continued to apply.

80.     Finally, any alleged indemnity obligation of Lehigh and Ruggiero is predicated on their status and liability as a possessor of land, and any such alleged liability does not arise out of

the ownership, maintenance, or use of an insured auto, such that the alleged liability does not fall

within the scope of coverage afforded under the subject Commercial Auto Policy.

     81.     Therefore, UFCC seeks and is entitled to declarations that:

     a.     UFCC has no duty to defend Steven T. Benner d/b/a Benner Brothers Trucking; Lehigh Hanson ECC, Inc.; Lehigh Hanson Inc.; Lehigh Hanson Services, LLC; Lehigh Cement Company; Lehigh Cement Company, LLC; Ruggiero Trucking Company, Inc.; Ruggiero Trucking Co., Inc.; Ruggiero Brothers, Inc.; or Ruggiero Bros., Inc. with respect to the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 200302537.

     b.     UFCC has no duty to indemnify Steven T. Benner d/b/a Benner Brothers Trucking; Lehigh Hanson ECC, Inc.; Lehigh Hanson Inc.; Lehigh Hanson Services, LLC; Lehigh Cement Company; Lehigh Cement Company, LLC; Ruggiero Trucking Company, Inc.; Ruggiero Trucking Co., Inc.; Ruggiero Brothers, Inc.; or Ruggiero Bros., Inc. with respect to the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 200302537.

     WHEREFORE, Plaintiff United Financial Casualty Company seeks Declaratory Judgment

in its favor as set forth herein declaring that Plaintiff has no duty to defend or indemnify any of

the Defendants herein with respect to the Lawsuit.

     Respectfully submitted,

     BURNS WHITE LLC

     By:  /s/ Taylor M. Davis
          Matthew A. Meyers (PA I.D. 202838)
          E-mail: mameyers@burnswhite.com
          Taylor M. Davis (PA I.D. 327312)
          E-mail: tmdavis@burnswhite.com
          Burns White Center
          48 26th Street
          Pittsburgh, PA 15222
          (412) 995-3281 – Direct
          (412) 995-3000 – Fax

          *Attorneys for Plaintiff,*
          *United Financial Casualty Company*